PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRIDE OF THE HILLS MFG. INC. *et al*., | ) | CASE NO. 5:09CV02764 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| RANGE RESOURCES-APPALACHIA, | ) | |
| LLC., | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** (Resolving ECF Nos. 34, 35, & |
| Defendant. | ) | 37) |

(5:09CV02764)

# Table of Contents

I.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.  Factual History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.  Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.  Plaintiffs' Motions for Partial Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.  Counts III, IV, VIII, and X Are Not Barred by the Economic Loss . . . . . . . . . 11
            a.  Counts III and IV: Breach of Implied Warranty of Merchantability and
               Breach of Implied Warranty of Fitness for a Particular Purpose
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            b.  Counts VIII and X: Fraud/Fraud in the Inducement and Civil
               Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.  Counts VII and IX Present Genuine Issues of Material Fact. . . . . . . . . . . . . . 15
            a.  Plaintiffs' Alleged Representations Are Materially at Issue. . . . . . . . . 15
            b.  Plaintiffs' Alleged Inspection Is Genuinely at Issue. . . . . . . . . . . . . . 17
        3.  Damages for Defects as to Counts I, II, III, IV, and VI Present Genuine Issues
           of Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    B.  Range's Motion for Partial Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.  Counts II, III, and IV Probe into Whether the Equipment Is Defective, a
           Function Reserved for the Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.  Plaintiffs' Repair Cost Claim Belongs to a Jury . . . . . . . . . . . . . . . . . . . . . . . 22
        3.  Range is Entitled to Summary Judgment As To Plaintiffs' Claim for Cost of
           Raw Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    C.  Plaintiff Grace Automation Services' Motion for Partial Summary Judgment . . . . . 25

    IV.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

(5:09CV02764)

## I. **Introduction**

Plaintiffs Pride of the Hills Mfg., Inc. and Grace Automation Services, Inc. (collectively "Plaintiffs") filed the present action against Defendant Range Resources-Appalachia, LLC ("Range"), claiming breach of contract, statement of account, and unjust enrichment. ECF No. 1 at 5-10. Range filed an Answer and Counterclaim alleging ten counterclaims, discussed below. ECF No. 5 at 21-32.

Before the Court are cross-motions for summary judgment. Pursuant to Fed. R. Civ. P. 56(c), Plaintiffs seek partial summary judgment on Range's counterclaims; Range seeks partial summary judgment on its own counterclaims; and Plaintiff Grace Automation Services, Inc. seeks partial summary judgment on Range's counterclaims. ECF Nos. 34, 35, and 37.

For the reasons that follow, the Court denies Plaintiffs' Motions for Partial Summary Judgment (ECF Nos. 34 and 37); and grants, in part, Range's Motion for Summary Judgment–barring Plaintiffs from recovering costs of raw materials based on Defendant's alleged oral promise to purchase additional Line Heaters and Separators, pursuant to Ohio Revised Code ¶ 1302.04 (ECF No. 35).

In accordance with Fed.R.Civ.P 56(g), attached at Appendix A, are material facts not genuinely in dispute.

## II. **Background**

Plaintiffs are related companies that design and manufacture gas production equipment. ECF Nos. 5 at 10, ¶ 70; 8 at 2, ¶ 7. Range is an independent oil and gas company engaged in the

(5:09CV02764)

exploration, development, and operation of oil and gas wells throughout the country, including Marcellus Shale wells in the Appalachian basin region.  ECF No. 5 at 10, ¶ 67.

### A.  Factual History

For several years, Plaintiffs have sold and delivered certain goods and provided certain services to Range.  ECF Nos. 1-1 at 5, 8; 5 at 12, ¶ 82; 8 at 3, ¶ 14.  Specifically, Plaintiff Pride of the Hills "had a long standing business arrangement in which Pride of the Hills agreed to sell and deliver certain goods and provide certain services" to Range, and Plaintiff Grace Automation "entered into an arrangement  to sell and deliver certain goods and provide certain services."  ECF Nos. 1-1 at 5, 8.  Range began using new high volume production techniques to produce gas when its Marcellus Shale operation started to rapidly grow.[1]  ECF Nos. 5 at 12, ¶ 83; 8 at 3, ¶ 14.

Plaintiff Grace Automation Services Inc. entered into a Master Service Agreement ("MSA") with Defendant Range Resources-Appalachia, LLC in 2008 to manufacture high

---

[1]  High volume completion and production techniques are highly technical in nature and requires high quality equipment.  ECF Nos. 5 at 12, ¶ 84; 8 at 3, ¶ 14.  For example, Range explained:

> [H]igh volume wells produce a mixture of gas, oil and water that is under very high pressures when it initially leaves the Wells.  The mixture must first pass through large line heaters ('Line Heaters') which prevent the mixture from freezing as its pressure drops by passing across pressure reduction chokes.  After the pressure of the mixture is lowered, the mixture must pass through three phase separators ("Separators") to separate water and oil from the gas.  The gas is then processed and the water and oil are sent to storage tanks.

ECF No. 5 at 12, ¶¶ 85-86.

4

(5:09CV02764)

capacity Line Heaters and Separators using high volume production techniques.[2]  ECF Nos. 5 at 11, ¶¶ 78, 88; 8 at 2-3, ¶¶ 8-14.  Notably, even though Pride of the Hills is not a signator to the MSA, the MSA plainly states "GRACE AUTOMATION SERVICES, INC., AND ITS SUBSIDIARIES AND AFFILIATES," implying that Pride of the Hills–an affiliate of Grace–is bound by the MSA.  ECF Nos. 5-1 at 2; 37-1 at 14, fn. 11; 41 at 20.

Range informed Plaintiffs that the Line Heaters and Separators would be critical to Range's operations, and provided Plaintiffs with confidential information so that Plaintiffs could design and manufacture Line Heaters and Separators.  ECF Nos. 5 at 11, ¶¶ 89-90; 8 at 3, ¶ 14. Plaintiffs understood Range's desire to purchase such equipment that would operate safely, efficiently, and continuously for a long period of time without failure.  ECF Nos. 5 at 11, ¶ 91; 8 at 3, ¶ 14.

In Plaintiffs' Reply to Range's Counterclaim, Plaintiffs' admit that they: "represented, among other things, that they were experts in the design and manufacture of this type of equipment and that they could design and manufacture the Line Heaters and Separators that Range needed for Range's particular Wells" (ECF Nos. 5 at 11, ¶ 93; 8 at 3, ¶ 14); "represented to Range that they could design and manufacture Line Heaters and Separators which would allow Range to safely and efficiently operate the Wells using high volume production techniques" (ECF Nos. 5 at 11, ¶ 94; 8 at 3, ¶ 14); and represented to Range that their welders were properly

---

[2]  In reply to Range's Counterclaim, Plaintiffs' "admit that Grace Automation entered into the Agreement, but deny that Pride of the Hills entered into the Agreement."  ECF No. 8 at 2 ¶¶ 8-13.

(5:09CV02764)

qualified to perform the work and that they properly inspected the Line Heaters and Separators

(ECF Nos. 5 at 15, ¶¶ 111-12; 8 at 4, ¶ 27).

Conversely, in Plaintiffs' Motion for Partial Summary Judgment on Defendant's

Economic Loss Claims, Fraud/Misrepresentation Claims, and Claims for Future Damages,

Plaintiffs' deny these same attributes.  ECF No. 34 at 6-7.

In February 2009, the Line Heater designed and manufactured by Plaintiffs failed

"because one of its factory welds contained a leak."  ECF Nos. 5 at 14, ¶ 101; 8 at 3, ¶ 19.  Range

immediately shut down the Well after discovering the leak to avoid an accident.  ECF Nos. 5 at

14, ¶ 102; 8 at 3, ¶ 20.  Plaintiffs sent a welder to repair the Line Heater, and delivered another

Line Heater for a different Well.  ECF Nos. 5 at 14, ¶¶ 103, 105; 8 at 3, ¶¶ 21, 23.

Before installing the Line Heater, "Range conducted an x-ray and visual inspection of the

Line Heater's welds."  ECF Nos. 5 at 14, ¶ 106; 8 at 3, ¶ 23.  After conducting the inspection,

Range rejected the Line Heater and returned it to Plaintiffs with instructions not to deliver

another Line Heater.  ECF Nos. 5 at 14, ¶¶ 108-09; 8 at 4, ¶ 25.

Thereafter, Plaintiffs met with Range and (1) acknowledged that they had serious weld

quality problems; (2) admitted that their quality control/quality assurance measures were lacking;

(3) represented that they would invest in a new welder; and (4) committed to changing their

welding procedures.  ECF Nos. 5 at 18, ¶ 132; 8 at 5, ¶ 37.  Immediately after the meeting,

Plaintiffs began to repair the Separators.  ECF Nos. 5 at 18, ¶ 137; 8 at 5, ¶ 39.  Range sent

Plaintiffs a check in the amount of $548,453.03, and Plaintiffs cashed the check and represented

that they were "currently fabricating replacement piping" in order to repair six Separators.  ECF

(5:09CV02764)

Nos. 5 at 18, ¶¶ 137-39; 8 at 5, ¶¶ 40-41.  Range sent Plaintiffs another check in the amount of $25,522.20, and upon receipt Plaintiffs cashed the check.  ECF Nos. 5 at 19, ¶¶ 140, 142; 8 at 5, ¶¶ 42, 44.

It is undisputed that Plaintiffs did not provide Range with the replacement piping to repair the six Separators.  ECF Nos. 5 at 19, ¶ 143; 8 at 6, ¶ 45.  Plaintiffs explain that they did not ship the replacement piping because Range refused to pay.  ECF No. 8 at 6, ¶ 45.  Range's Facility Superintendent met with Curt Murray, Sr., President and CEO of Plaintiff Pride of the Hills and Vice President of Plaintiff Grace Automation Services, to discuss Plaintiffs' refusal to deliver the allegedly fabricated replacement piping in order to repair six Separators.  ECF Nos. 5 at 10, ¶ 71 and 19, ¶ 149; 8 at 6, ¶ 47.  Several days later, Range's Facility Engineering Manager spoke with Curt Murray, Sr. *via* telephone.  ECF Nos. 5 at 20, ¶ 151; 8 at 6, ¶ 49.  Thereafter, Plaintiffs' counsel sent Range a letter that included a list of allegedly overdue invoices requesting payment amounting to $1,000,582.66.  ECF Nos. 5 at 20, ¶ 156; 8 at 6, ¶ 52.

**B.  Procedural History**

Plaintiffs filed their Complaint against Range in the Common Pleas Court of Holmes County, Ohio alleging the following claims:

Pride of the Hills Count I:        Breach of Contract
Pride of the Hills Count II:       Statement of Account[3]

---

[3]  *See* Ohio Civil Rule 10(D)(1) Attachments to Pleadings:

(1) Account or written instrument. When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the

(5:09CV02764)

|                             |                              |
|-----------------------------|------------------------------|
| Pride of the Hills Count III: | Statement of Account[4]      |
| Pride of the Hills Count IV: | Unjust Enrichment            |
| Grace Automation Count V:   | Breach of Contract           |
| Grace Automation Count VI:  | Statement of Account         |
| Grace Automation Count VII: | Statement of Account[5]      |
| Grace Automation Count VIII: | Unjust Enrichment           |

ECF No. 1-1 at 5-10.  Range filed a Notice of Removal, removing the cause of action from the

Common Pleas Court of Holmes County, Ohio pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

ECF No. 1.  Range filed an Answer and Counterclaim alleging the following ten counterclaims:

|             |                                                              |
|-------------|--------------------------------------------------------------|
| Count I:    | Breach of Contract                                           |
| Count II:   | Breach of Express Warranty                                   |
| Count III:  | Breach of the Implied Warranty of Merchantability            |
| Count IV:   | Breach of the Implied Warranty of Fitness for a Particular Purpose |
| Count V:    | Promissory Estoppel                                          |
| Count VI:   | Unjust Enrichment                                            |
| Count VII:  | Fraud/Fraudulent Inducement                                 |
| Count VIII: | Fraud/Fraudulent Inducement                                 |
| Count IX:   | Negligent Misrepresentation                                 |
| Count X:    | Civil Conspiracy                                            |

ECF No. 5 at 21-32.  Plaintiffs filed a reply to Range's Counterclaim.  ECF No. 8.

Subsequently, Plaintiffs filed Motions for Partial Summary Judgment on Range's

Economic Loss Claims (Counts III, IV, VIII, and X), Fraud/Misrepresentation Claims, and

Claims for Future Damages.  ECF No. 34.  Range filed a Motion for Partial Summary Judgment

requesting that the Court enter summary judgment in Range's favor on Counts II, III, IV,

---

pleading.

[4]  Pride of the Hills' Count III is identical to Pride of the Hills' Count II.

[5]  Grace Automation's Count VII is identical to Grace Automation's Count VI.

8

(5:09CV02764)

Plaintiffs' repair costs claim, and Plaintiffs cost of raw material to manufacture goods.[6]  ECF No.

35.  Plaintiff/Counter-Defendant Grace Automation Services filed a Motion for Partial Summary

Judgment on all claims brought against them by Range.  ECF No. 37.

### III.  Discussion

Federal Rule of Civil Procedure 56(c) governs summary judgment motions, and provides

in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a mater of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary

judgment:

> Supporting and opposing affidavits shall be made on personal knowledge,
> shall set forth such facts as would be admissible in evidence, and shall
> show affirmatively that the affiant is competent to testify to the matters
> stated therein. […] The court may permit affidavits to be supplemented or
> opposed by depositions, answers to interrogatories, or further affidavits.
> When a motion for summary judgment is made and supported as provided
> in this rule, an adverse party may not rest upon the mere allegations or
> denial of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered against the
> adverse party.

The movant, however, is not required to file affidavits or other similar materials negating a claim

on which its opponent bears the burden of proof, so long as the movant relies upon the absence

---

[6] Defending parties may move for summary judgment as well.  See *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).

(5:09CV02764)

of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex*, 477 U.S. at 317.

Upon review, the Court must view the evidence in light most favorable to the non-moving party to determine whether a genuine issue of material facts exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson*, 477 U.S. at 248.  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Cross-motions for summary judgment are examined under the usual Rule 56 standards.  *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005).  Each cross-motion must be evaluated on its own merits, with the court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Appoloni v. U.S.*, 450 F.3d 185, 189 (6th Cir. 2006).

Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir.

(5:09CV02764)

1988)).  The non-moving party is under an affirmative duty to point out specific facts in the

record as it has been established that create a genuine issue of material fact.  *Fulson v. Columbus,*

*801 F.Supp. 1, 4 (S.D. Ohio 1992).*  The non-movant must show more than a scintilla of evidence

to overcome summary judgment; it is not enough for the non-moving party to show that there is

some metaphysical doubt as to material facts.  *Id.*

### A.  Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs move for partial summary judgment on counterclaims:  (1) Counts III (breach of

implied warranty of merchantability), IV (breach of implied warranty of fitness for particular

purpose), VIII (fraud/fraudulent inducement), and X (civil conspiracy); (2) Counts VII

(fraud/fraudulent inducement) and IX (negligent misrepresentation); and (3) Range's attempt to

recover in contract, express warranty, implied warranty or tort damages for defects that did not

occur.  ECF No. 34 at 1.

### 1.  Counts III, IV, VIII, and X Are Not Barred by the Economic Loss

Plaintiffs argue that the economic loss rule prevents Range from recovering on Counts III,

IV, VIII, and X.  ECF No. 34 at 4-6.  Under Ohio law, "[t]he economic-loss rule generally

prevents recovery in tort of damages for purely economic loss."  *Pavlovich v. Nat'l City* Bank,

435 F.3d 560, 569 (6th Cir. 2006) (citing *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc*., 106

Ohio St.3d 412, 835 N.E.2d 701, 704 (2005)).  The economic-loss rule applies in a tort action

only when economic loss is unaccompanied by personal injury or property damage.  *Pavlovich,*

435 F.3d at 569 (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40,

11

(5:09CV02764)

537 N.E.2d 624, 629-30 (1989)).  Plaintiffs allege that Counts III, IV, VIII, and X are pleaded in

tort and barred by the economic loss rule.  ECF No. 34 at 5-9.

### a. Counts III and IV: Breach of Implied Warranty of Merchantability and Breach of Implied Warranty of Fitness for a Particular Purpose

Plaintiffs allege that Range has asserted a tort claim in Counts III and IV and must resort

to contract law to recover on Counts III and IV.  ECF No. 34 at 5.  Plaintiffs argue that Range

must rely upon the Uniform Commercial Code's contractual remedies instead of suing in tort

under strict liability or implied warranty for economic damages.  ECF No. 34 at 5

In response, Range argues that Counts III and IV have been pleaded in contract, not tort.

ECF No. 40 at 15.  As support, Range turns to the language in its Counterclaim that references

the Uniform Commercial Code provisions:

178. Line Heaters and Separators are goods as defined in R.C. § 1302.01(8).[7]

179. Pursuant to R.C. § 1302.27, Counterclaim-Defendants [Plaintiffs], as sellers of Line Heaters and Separators, impliedly warranted to Range that they would be merchantable.

183. Pursuant to R.C. § 1302.28, Counterclaim-Defendants [Plaintiffs], as Sellers of Line Heaters and Separators, warranted to Range that they would be fit for a particular purpose.

ECF Nos. 40 at 15; 5 at 23-24, ¶¶ 178, 179, 183.  Ohio Revised Code § 1302.27(A) specifies in

pertinent part: "[A] warranty that the goods shall be merchantable is implied in a contract for

---

[7] R.C. § 1302.01(8), described in Title XIII, Commercial Transactions, specifies in pertinent part:  "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action."

12

(5:09CV02764)

their sale if the seller is a merchant with respect to goods of that kind."  Similarly, Ohio Revised

Code § 1302.28 specifies in part:

> Where the seller at the time of contracting has reason to know any particular
> purpose for which the goods are required and that the buyer is relying on the
> seller's skill or judgment to select or furnish suitable goods, there is . . . an
> implied warranty that the goods shall be fit for such purpose.

Plaintiffs cannot prevail as a matter of law.  *See Beard v. Banks*, 548 U.S. 521, 529

(2006) (discussing judgment is appropriate "as a matter of law" when the moving party should

prevail).  Range has set-forth specific facts showing that as a matter of law Counts VIII and X are

pleaded in contract pursuant to the Ohio Revised Code and the Uniform Commercial Code.  ECF

No. 41 at 15.  Federal Rule of Civil Procedure 8(e) requires the courts to construe pleadings

liberally.  *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (explaining the "fundamental

tenor of the Rules is one of liberality rather than technicality").  Counts III and IV show that

Range's claims are grounded in contract, not tort as alleged by Plaintiffs.

### b.  Counts VIII and X: Fraud/Fraud in the Inducement and Civil Conspiracy

Plaintiffs argue that Range has asserted a tort claim in Count VIII alleging that Plaintiffs

made certain statements and representations to induce Range to pay a portion of the outstanding

invoices due and owing to Plaintiffs.  ECF No. 34 at 5.  Plaintiffs aver that the economic loss

rule prohibits Range from recovering on Count VIII because Range's sought relief–the

recoupment of monies spent for the allegedly defective product–is purely economic.  Plaintiffs

further contend that Count X alleging Civil Conspiracy for acting in concert to produce the

13

(5:09CV02764)

alleged fraud described in Count VIII is subject to and barred by the economic loss rule by definition because "those damages are economic."  ECF No. 34 at 5.

In response, Range argues that the economic loss rule does not bar Counts VIII and X because the economic loss rule is "limited in its application," and under Ohio law, the rule does not bar claims for intentional torts.  ECF No. 40 at 14.  Further, Range argues that it "seeks non-economic punitive damages for both these claims and for this reason alone, the economic loss rule cannot bar either claim."  ECF No. 40 at 14-15.

The Court must deny a motion for summary judgment when the moving party is not entitled to a judgment as a matter of law.  *Beard v. Banks*, 548 U.S. 521, 529 (2006).  "The economic loss rule prevents recovery in negligence of purely economic loss, not recovery under an intentional tort theory for economic loss."  *Reengineering Consultants, Ltd. v. EMC Corp.*, No. 2:08-CV-47, 2009 U.S. Dist. LEXIS 2627, at *16 (S.D. Ohio Jan. 14, 2009).  Range, the non-moving party, has set-forth specific facts showing that the economic loss rule does not apply because Counts VIII and X are intentional torts.  According to Ohio law, civil conspiracy is an intentional tort.  *Hicks v. Bryan Medical Group, Inc.*, 287 F.Supp.2d 795, 813 (N.D. Ohio 2003) (explaining the malice involved in the tort of civil conspiracy is "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another").  Fraud in the inducement is also an intentional tort under Ohio law.  *See Hale v. Enerco Group, Inc.*, Case No. 1:10CV00867, 2011 WL 49545, at * 5 (N.D. of Ohio Jan. 5, 2011) (citing *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987)). Summary

14

(5:09CV02764)

judgment is denied as to Counts VIII and X because the economic loss rule does not preclude

recovery as a matter of law.

### 2.  Counts VII and IX Present Genuine Issues of Material Fact

Plaintiffs argue that they are entitled to judgment as a matter of law as to Counts VII

alleging that Plaintiffs made representations regarding Plaintiffs' capabilities and Count IX

Negligent Representation.  Under Ohio law, the elements of fraud are: (1) a representation or,

where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at

hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and

recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of

misleading another into relying upon it, (5) justifiable reliance upon the representation or

concealment, and (6) a resulting injury proximately caused by the reliance.  *See Hale v. Enerco*

*Group, Inc*., Case No. 1:10CV00867, 2011 WL 49545, at * 5 (N.D. of Ohio Jan. 5, 2011) (citing

*Gaines v. Preterm-Cleveland, Inc*., 514 N.E.2d 709, 712 (Ohio 1987)).  Negligent

misrepresentation requires the same essential elements of fraud, except that the defendant need

not know that the statement in question is false. *Delman v. Cleveland Hts*., 41 Ohio St. 3d 1, 534

N.E.2d 835, 837-38 (1989).

### a.  Plaintiffs' Alleged Representations Are Materially at Issue

Plaintiffs' allege that Range's following counterclaims are unsupported and meritless:

207. Counterclaim-Defendants represented to Range that
Counterclaim-Defendants could design and manufacture Line Heaters and
Separators so that Range could safely and efficiently operate the Wells using high
volume production techniques.

208. Counterclaim-Defendants represented to Range that Counterclaim-Defendants'

(5:09CV02764)

> welders were properly qualified.
>
> 209. Counterclaim-Defendants represented to Range that Counterclaim-Defendants were properly inspecting Line Heaters and Separators.
>
> 210. Counterclaim-Defendants represented to Range that the Line Heaters and Separators Counterclaim-Defendants had designed and manufactured were not defective.

ECF Nos. 34 at 6; 5 at 28, ¶¶ 207-210.  Plaintiffs argue that "there is no evidence before the Court of the exact statement made by either Pride or Grace regarding Plaintiffs' respective qualifications."  ECF No. 34 at 7.  Alternatively, even if such evidence did exist, then Range cannot provide evidence showing that Plaintiffs are not considered experts in the design and manufacture of Line Heaters and Separators.  ECF No. 34 at 6.

In response, Range avers that the record reflects that Plaintiffs' representations were false based on Plaintiffs' prior admissions.  Plaintiffs admitted the following in their Reply to Range's Counterclaim: (1) Plaintiffs "represented, among other things, that they were experts in the design and manufacture of this type of equipment and that they could design and manufacture the Line Heaters and Separators that Range needed for Range's particular Wells" (ECF Nos. 5 at 11, ¶ 93; 8 at 3, ¶ 14); (2) Plaintiffs "represented to Range that they could design and manufacture Line Heaters and Separators which would allow Range to safely and efficiently operate the Wells using high volume production techniques" (ECF Nos. 5 at 11, ¶ 94; 8 at 3, ¶ 14); (3) Plaintiffs sent a welder to the Well to repair the Line Heater, and delivered another Line Heater for another Well (ECF Nos. 5 at 14, ¶¶ 103, 105; 8 at 3, ¶¶ 21, 23); and, (4) Plaintiffs represented to Range that their welders were properly qualified to perform the work and that they properly inspected

16

(5:09CV02764)

the Line Heaters and Separators (ECF Nos. 5 at 15, ¶¶ 111-12; 8 at 4, ¶ 27).  ECF No. 40 at 16-17.

Range also highlights Curt Murray, Sr.'s deposition explaining that Pride of the Hill's welders were qualified and that Plaintiffs would properly inspect the equipment:

> Q.     When Range approached you about doing the line heaters and the separators for the Marcellus shale, did you ever tell the Range employees that the new welders that would be working on this new, larger equipment would be qualified to do the welds?
>
> A.      I'm sure that as some point I had told them, you know, that we only used code certified welders to weld this type of equipment. And that's our normal policy, not just for Range, for everyone.
>
> Q.     Same question. During the–this time period that they were seeking you to do this larger equipment for the Marcellus shale, did you ever tell Range that you would make sure that the line heaters and separators were properly inspected?
>
> A.     I'm sure.

ECF Nos. 40 at 12; 42-1 at 43.

### b.  Plaintiffs' Alleged Inspection Is Genuinely at Issue

Plaintiffs further contend that the record shows that Plaintiff Pride of the Hills "complied with its policy to visually inspect every weld."  ECF No. 34 at 8.  During his deposition, Plaintiff Pride of the Hills employee, Aaron Blaugh, that he was in charge of inspecting the welds on the equipment and witnessing the hydrostatic tests.  ECF Nos. 34 at 8; 42-3 at 5.  Mr. Blaugh testified that he:  (1) inspected the welds on the shop floor and in the hydro department and (2) visually inspected at least 75-80% of the welds on each unit built for Range and observed 75-80% of the hydrostatic tests done on the units build for Range.  ECF Nos. 34 at 8; 42-3 at 7-8, 10.  Alternatively, Plaintiffs' contend that if Mr. Blaugh "could not visually inspect all the

(5:09CV02764)

welds," then presumably other Plaintiffs' personnel would inspect the remaining welds. ECF Nos. 34 at 8-9; 42-3 at 39, 40.

Range argues that Plaintiffs' representations are false based on expert testimony demonstrating that the equipment was defective and not properly inspected. ECF No. 40 at 19. Range's expert, Dr. Geoffrey Egan, concluded that the piping welds on the Heaters and Separators "did not meet the requirements of the applicable oilfield codes and standards," were "not suitable for their intended purpose," "represent[ed] a gross and pervasive breakdown in quality in the fabrication shop," and would have represented an "extreme hazard to personnel" if "left in place."[8] ECF No. 42-9 at 13, ¶¶ 5-8.

As to Counts VII and IX, Plaintiffs, the moving party, have failed to make a *prima facie* showing that no genuine dispute as to material facts exists with respect to Plaintiffs' representations and qualifications.[9] *See Celotex Corp.*, 477 U.S. at 323-24. The Supreme Court has explained that upon viewing the facts in the light most favorable to the nonmoving party "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott*, 550 U.S. at 380.

---

[8] Dr. Geoffrey Egan's experience includes over thirty years of assessing weld quality and determining the existence of weld defects. ECF No. 35 at 1.

[9] Evidence, not contentions, avoids summary judgment." *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005).

(5:09CV02764)

In the instant matter, despite Plaintiffs' admissions to Range's allegations set forth in its

Counterclaim, genuine issues of Plaintiffs' alleged representations are materially at issue.  *See*

*Anderson,* 477 U.S. at 247-252 (explaining a fact is "material" if it might affect the outcome of a

case).  Thus, summary judgment as to Counts VII and IX is improper.

### 3.  Damages for Defects as to Counts I, II, III, IV, and VI Present Genuine Issues of Material Facts

Plaintiffs' claim that they are entitled to summary judgment as a matter of law on the

counterclaims seeking damages for defects.[10]  ECF No. 34 at 10.  Plaintiffs' argue that the "only

'defect' ever to manifest itself was a pinhole leak in one weld on one Line Heater . . . [and] [n]o

other leaks occurred . . . ."  ECF No. 34 at 10.  Thus, "Range cannot recover for defects which

had not occurred and require Plaintiffs to pay for an upgrade which Range did not order."  ECF

No. 34 at 11, 12.  Plaintiffs' contend that "Range cannot recover until a specific unit or product

 fails because there is no assurance that any of the individual welds will fail."  ECF No. 34 at 13.

Range clarifies that it is "not claiming any future damages or speculating regarding future

injuries[;] . . . [i]nstead, Range has already hired and paid third parties to repair *all* the defective

equipment to an approximate cost of $1,000,000 and it is these costs of repairs that Range is

seeking to recover."  ECF No. 40 at 22 (emphasis in original).  Range points out that "[t]o

prevent Range from recovering damages until a unit 'fails' and kills someone not only ignores

the UCC, it is pure lunacy . . . [because] Range can recover damages to correct known defects

---

[10]  "Range has requested [that] the Court award damages for repair and/or replacement
of allegedly defective Line Heaters and Separators as part of Counts I, II, III, and VI."  ECF
No. 34 at 10.

19

(5:09CV02764)

before an accident happens." ECF No. 40 at 22-23. Further, Range argues that "[b]ecause the Heaters and Separators were defective, Plaintiffs breached their warranties and are liable to the costs to repair the defective equipment even if it had not yet 'failed.'" ECF No. 40 at 24.

Plaintiffs request for summary judgment as to Range's counterclaims seeking damages for defects is two-fold. The Court must first resolve whether the Line Heaters and Separators were defective, then resolve whether Plaintiffs can avoid liability as to the defects. The two-fold inquiry requires the Court to draw factual inferences of whether the equipment at issue was defective–a function reserved for the jury. *Anderson*, 477 U.S. at 255. Therefore, the alleged defective Line Heaters and Separators present a genuine issue of material fact, and, accordingly, the issue of whether damages were derived from the alleged defective Line Heaters and Separators is for a jury.

### B. Range's Motion for Partial Summary Judgment

Range moves for summary judgment on the following claims: (1) Count II (Range's claim for breach of express warranty; (2) Count III (Range's claims for breach of warranty of merchantabiltiy); (3) Count IV (Range's claims for breach of warranty of fitness for particular purpose; (4) Plaintiffs' repair cost claim; and, (5) Plaintiffs' claim for costs of raw materials to manufacture goods Range allegedly orally promised to purchase. ECF No. 35.

### 1. Counts II, III, and IV Probe into Whether the Equipment Is Defective, a Function Reserved for the Jury

Range argues that the expert testimony coupled with Sixth Circuit law entitles them to summary judgment and bars Plaintiffs from recovering their alleged costs to repair the defective equipment. ECF No. 35 at 2. Range relies on Dr. Geoffrey Egan's expert opinion finding that

(5:09CV02764)

"the heater and separator contained extensive and pervasive welding defects which represented an extreme safety hazard." ECF No. 35 at 1.

Plaintiffs allege that expert William Roach has rebutted Dr. Egan's opinion. ECF No. 43 at 5-6. Plaintiffs highlight that Dr. Egan failed to cite to a standard that was not met, but rather stated that the welds would fail "any standard." ECF No. 43 at 5. Plaintiffs argue that Dr. Egan's opinion fails to provide evidence that the equipment was defective. ECF No. 43 at 5, fn 3. Expert William Roach found that "due to a lack of specifications given to Pride by Range, the only code that could be applicable was 49 CFR 192." ECF No. 43 at 6.

Range refutes Plaintiffs' argument by explaining that Plaintiffs cannot withstand summary judgment by offering the opinion of an expert with no firsthand knowledge.[11] ECF No. 46 at 1.

A genuine issue of material fact exists as to whether the Line Heaters and Separators supplied to Range were defective. A "genuine issue" exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving

---

[11] Range misapplies the affidavit standard. To be considered on a motion for summary judgment, an affidavit must be: sworn; based upon personal knowledge; state specific facts admissible in evidence at the time of trial; and, offered by a competent affiant. Briggs v. Potter, 463 F.3d 507, 512 (6th Cir. 2006). Personal knowledge may include reasonable inferences and opinions provided that all inferences and opinions are premised on first-hand observations *or* personal experience. Yeazel v. Baxter Healthcare Crop., Case No. 1:09-hc-60186, 2011 WL 711453, at *2 (N.D. Ohio Feb. 22, 2011); *see also* Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003).

(5:09CV02764)

party.[12] *Ricci v. DeStefano*, _ U.S. _, _, 129 S.Ct. 2658, 2677 (2009); *Scott*, 550 U.S. at 380.

The conflicting expert testimony presents a genuine issue of material fact for the factfinder, and

Range's request for summary judgment on the counterclaims seeking damages for defects is

reserved for a jury.

### 2.  Plaintiffs' Repair Cost Claim Belongs to a Jury

Range seeks judgment as a matter of law on Plaintiffs' claim for payment on work

completed in 2009 at Range's request.  ECF No. 35 at 2.  Range argues that "because the heaters

and separators were defective, as a matter of law, [Plaintiffs] are barred from recovering their

alleged costs to repair this defective equipment."  ECF No. 35 at 2, ¶ 5.  Range further avers that

Plaintiffs agreed to repair the alleged defective equipment "without ever requesting payment

from Range."  ECF No. 35 at 2, ¶ 6.  Alternatively, Range argues that if the Court finds that the

equipment is not defective, then Range is still entitled to summary judgment based on the

doctrine of estoppel.  ECF No. 35 at 2, ¶ 6.

Plaintiffs allege that a genuine issue of material fact exist regarding Range's contention

for summary judgment as a matter of law on Plaintiffs' claim for payment on work completed in

2009.  ECF No. 43 at 11.  Plaintiffs explain that Range's argument is premised on the equipment

being defective, and respond that the equipment is not defective or that a genuine issue of

material fact precludes summary judgment.  Plaintiffs also challenge Range's estoppel argument

---

[12]  Evaluating credibility, weighing evidence, and drawing factual inferences are all functions reserved for the jury.  *Anderson*, 477 U.S. at 255; *see also Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 451 (6th Cir. 2006) (explaining the court will not weigh the credibility of witnesses or other evidence in ruling on a motion for summary judgment).

(5:09CV02764)

by alleging that there is "unrebutted documented evidence that Range asked Pride to put together a cost estimate to do the 'repairs,'" creating a genuine issue of material fact as to who should bear the cost of the additional work.  ECF No. 43 at 13.  Range provides that Plaintiffs are barred from recovering repair costs simply because the piping welds were defective and as a result, Plaintiffs breached their warranties.  ECF No. 46 at 7.

In accordance with Section B.1., above, the alleged defective Line Heaters and Separators present a genuine issue of material fact, and, accordingly, the issue of whether damages were derived from the alleged defective Line Heaters and Separators is for a jury.

### 3. Range is Entitled to Summary Judgment As To Plaintiffs' Claim for Cost of Raw Materials

Range argues that the Court should enter judgment as a matter of law barring Plaintiffs from recovering their purported costs of raw materials based on Range's alleged oral promise to purchase additional heaters and separators pursuant to the R.C. 1302.04(A).  ECF No. 35 at 2, ¶ 6.  Ohio Revised Code Statute of Frauds described in 1302.04(A) specifies:

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

Plaintiffs argue that the parties course of dealing prevents Range from judgment on Plaintiffs' claim for payment on materials purchased to build production equipment in 2009 by pointing to the plain language in R.C. § 1302.04(C), which specifies in pertinent part:

23

(5:09CV02764)

> (C) A contract which does not satisfy the requirements of division (A) of this
> section but which is valid in other respects is enforceable:
>
> (1) if the goods are to be specially manufactured for the buyer and are not suitable
> for sale to others in the ordinary course of the seller's business and the seller,
> before notice of repudiation is received and under circumstances which reasonably
> indicate that the goods are for the buyer, has made either a substantial beginning
> of their manufacture or commitments for their procurement;

ECF No. 43 at 13.  Plaintiffs summarized its course of dealing with Range by describing the

following:

> For years, Range would tell Pride how many wells would be drilled in the coming
> months. When the well was nearly complete, Range would call Pride and want the
> production unit delivered within days. Pride needed to order the necessary
> materials to build the units well in advance of when they would be needed. Range
> had no problems with this arrangement until the lawsuit was filed.

ECF No. 39 at 14.

In reply, Range argues that the exception does not apply because the goods are not

specially manufactured–that is, raw materials purchased to manufacture a final product were not

"specially manufactured."  ECF No. 46 at 9.  Range alleges that the raw materials at issue, shell

heads, valves, piping, flanges, and fittings, are not specially manufactured goods.  ECF No. 46 at

9.  Range points out that the goods are not "specially manufactured" because Plaintiffs have

admitted that they "sold some of these raw materials and used some of the raw materials for

equipment made for other customers . . . ."  ECF No. 46 at 10.  Plaintiffs explained that the 2008

wells are "no different than what Pride had been making for GLEP, Range, and other customers

for fifteen years now."  ECF No. 39 at 3.  Range further explained that Plaintiffs have failed to

show that they made a "substantial beginning of their manufacture" according to R.C. §

1302.04(C).

24

(5:09CV02764)

Range has met its burden of showing that Plaintiffs are not entitled to recover their purported costs of raw materials based on Range's alleged oral promise to purchase additional heaters and separators pursuant to the R.C. 1302.04(A).  The party moving for summary judgment is not required to disprove the opponent's claims or defenses.  *Edwards v. Agullard*, 482 U.S. 578, 595 (1987); *see also Celotex*, 477 U.S. at 323.  The moving party's burden is often satisfied by pointing out for the Court an absence of evidence in support of the non-moving party's claims or defenses.  *Celotex*, 477 U.S. at 317.  The burden of going forward shifts to Plaintiffs, the non-moving party, to show that a genuine issue of material fact remains for the factfinder to resolve.  *Beard*, 548 U.S. at 529.  In the instant matter, albeit plausible, Plaintiffs' scenario that the raw materials may constitute specially manufactured goods is insufficient to meet its burden because Plaintiffs proffered scenario conflicts with direct, contrary evidence that the materials are not specially manufactured.  *Scott*, 550 U.S. at 380.  Therefore, summary judgment is appropriate.

### C.  Plaintiff Grace Automation Services' Motion for Partial Summary Judgment

Plaintiff Grace Automation Services ("Grace") separately moves for summary judgment on Range's counterclaims:

| | |
|---|---|
| Count I: | Breach of Contract |
| Count II: | Breach of Express Warranty |
| Count III: | Breach of the Implied Warranty of Merchantability |
| Count IV: | Breach of the Implied Warranty of Fitness for a Particular Purpose |
| Count V: | Promissory Estoppel |
| Count VI: | Unjust Enrichment |
| Count VII: | Fraud/Fraudulent Inducement |
| Count VIII: | Fraud/Fraudulent Inducement |
| Count IX: | Negligent Misrepresentation |
| Count X: | Civil Conspiracy |

(5:09CV02764)

ECF. Nos. 37-1 at 7; 5 at 21-32.

At the outset, Grace differentiates itself from Pride of the Hills Manufacturing, Inc. by explaining that the entities provide separate and distinct services to companies drilling for natural gas. ECF No. 37-1 at 2. Grace claims that its business consists of "servicing telemetry for natural gas wells throughout the Appalachian Basin." ECF No. 37-1 at 3. Grace argues that it is entitled to summary judgment as a matter of law because "[n]one of the claims articulated by Range have anything to do with telemetry work provided by Grace . . . [and] Grace is not the manufacturer of any of the line heaters or separators purchased by Range." ECF No. 37-1 at 8.

Grace attempts to bolster its position and avoid liability by arguing that "Range's breach of contract (Count I), breach of warranty claims (Counts II through IV), its fraud claim (Count VII), as well as its claims alleging 'repair' of the non-defective goods (Counts V, VI, VIII, IX and X) . . . seek to retroactively modify the terms and conditions of the previous sales and future sales by demanding POH (and Grace) upgrade the existing line heaters and separators to a higher standard." ECF No. 37-1 at 10. Relying on UCC 2-208(1) and Ohio law, Grace highlights its course of performance with Range and argues that Range may not recover for allegedly defective equipment because "dozens of units were sold and accepted for over a year without objection" and "Range's sudden demand that the goods be retroactively upgraded to a higher standard is a material alteration of the contract." ECF No. 37-1 at 12-13.

In addition to the parties' course of performance, Range continues to argue that the plain language of the Master Service Agreement ("MSA") is unambiguously limited to Grace's services and "not the sale of any goods." ECF No. 37-1 at 14. Grace alleges the following:

(5:09CV02764)

> Both the first and third 'Whereas' clauses of the MSA speak of the agreement in terms of services provided to Range. The first states that Range is in the oil and gas exploration business and regularly 'enters into contracts with independent contractors for performance of service thereto.'  While the third states that the 'Contractor represents that it has adequate equipment in good working order and fully trained personnel capable of efficiently operating such equipment and performing services for Operator (Range) in a safe and workmanlike manner.' Neither of these speak of the sale of goods, only the performance of service to Range.

ECF No. 37-1 at 15.  Grace admits that Section 2.1 of the MSA does discuss "the furnishing of goods," yet those goods are references to "goods not at issue in this suit."  ECF No. 37-1 at 15.

Grace further contends that the MSA was "executed between Range Resources and Grace Automation Serives, Inc. *and its subsidiaries and affiliates*," which does not include Pride of the Hills.  ECF No. 37-1 at 14 (emphasis in original).  Grace points out that the MSA does not define Grace's subsidiaries and affiliates, and Pride of the Hills "is not even a signator to the MSA. . . ." ECF No. 37-1 at 14, fn. 11.  Grace and Pride of the Hills "maintain separate corporate forms, IRS filings, state filings, employees, etc." ECF No. 37-1 at 16.  Likewise, if the Court finds that Pride of the Hills is not an affiliate of Grace, then Grace argues that it retains no liability as to all warranties, such that the warranties are those of Pride of the Hills.  ECF No. 37-1 at 17.  Grace therefore concludes that it should "be dismissed from any breach of warranty claim."  ECF No. 37-1 at 18.

In response, Range illustrates genuine issues of material facts.  Range explains that Pride of the Hills and Grace are related companies because (1) Curt Murray Sr. is President and CEO of Pride of the Hills and Vice President of Grace (ECF No. 42-19 at 3); (2) Curt Murray Jr. Is Vice President and COO of Pride of the Hills and President of Grace (ECF No. 42-19 at 3); (3)

27

(5:09CV02764)

Pride of the Hills and Grace are operated out of the same office (ECF No. 42-1 at 14); and, (4)

Pride of the Hills and Grace have the same accounting department (ECF Nos. 42-1 at 14). ECF

No. 41 at 6. Range further contends that according to Sixth Circuit case law, Pride of the Hills is

an affiliate and a party to the MSA. ECF No. 41 at 20; *see Ohio Valley Coal Co. v.*

*Pleasant Ridge Synfuels, LLC*, 54 Fed. Appx. 610, 614 (6th Cir. 2002) (holding that where one

individual served as the CEO of one company and owned and controlled another company, the

companies were "affiliates" under an agreement).

 As to Grace's allegation that Range's counterclaims is an attempt to circumvent the

MSA, Range explains that UCC 2-208(1) and related sections are irrelevant because "as soon as

Range found out about the defects it objected to the goods." ECF No. 41 at 17. In short, Range

argues that "there is absolutely no support (in the record or the law) for Grace's contention and

defense that Range acquiesced to the defective equipment." ECF No. 41 at 19.

 Based upon the record before the Court, summary judgment in Grace's favor is improper

because genuine issues exists as to various material facts. A rational factfinder considering the

evidence and substantive law at issue could find in favor of Range, the non-moving party. *Scott*,

550 U.S. at 380; *see also Anderson*, 477 U.S. at 247-52.

## IV.  Conclusion

 For the reasons provided above, the Court denies Plaintiffs' Partial Motion for Summary

Judgment (ECF No. 34); Range's Partial Motion for Summary Judgment as to:  (1) Count II

(Range's claim for breach of express warranty); (2) Count III (Range's claims for breach of

warranty of merchantabiltiy); (3) Count IV (Range's claims for breach of warranty of fitness for

28

(5:09CV02764)

particular purpose); and, (4) Plaintiffs' repair cost claim (ECF No. 35); and Grace's Partial

Motion for Summary Judgement (ECF No. 37).

 The Court grants Range's Motion to Summary Judgment as to Plaintiffs' claim for costs

of raw materials to manufacture goods Range allegedly orally promised to purchase.  ECF No.

35.

 IT IS SO ORDERED.


May 27, 2011                                                 s/ *Benita Y. Pearson*
Date                                                        Benita Y. Pearson
                                                            United States District Judge

(5:09CV02764)

## APPENDIX A–Undisputed Facts

1.  For several years, Plaintiffs have sold and delivered certain goods and provided certain services to Range.  ECF Nos. 1-1 at 5, 8; 5 at 12, ¶ 82; 8 at 3, ¶ 14.  Specifically, Plaintiff Pride of the Hills "had a long standing business arrangement in which Pride of the Hills agreed to sell and deliver certain goods and provide certain services" to Range, and Plaintiff Grace Automation "entered into an arrangement  to sell and deliver certain goods and provide certain services."  ECF Nos. 1-1 at 5, 8.

2.  Range began using new high volume production techniques to produce gas when its Marcellus Shale operation started to rapidly grow.  ECF Nos. 5 at 12, ¶ 83; 8 at 3, ¶ 14.

3.  Plaintiff Grace Automation Services Inc. entered into a Master Service Agreement ("MSA") with Defendant Range Resources-Appalachia, LLC in 2008 to manufacture high capacity Line Heaters and Separators using high volume production techniques.  ECF Nos. 5 at 11, ¶¶ 78, 88; 8 at 2-3, ¶¶ 8-14.

4.  Range informed Plaintiffs that the Line Heaters and Separators would be critical to Range's operations, and provided Plaintiffs with confidential information so that Plaintiffs could design and manufacture Line Heaters and Separators.  ECF Nos. 5 at 11, ¶¶ 89-90; 8 at 3, ¶ 14.

5.  Plaintiffs understood Range's desire to purchase such equipment that would operate safely, efficiently, and continuously for a long period of time without failure.  ECF Nos. 5 at 11, ¶ 91; 8 at 3, ¶ 14.

6.  In February 2009, the Line Heater designed and manufactured by Plaintiffs failed "because one of its factory welds contained a leak."  ECF Nos. 5 at 14, ¶ 101; 8 at 3, ¶ 19.

7.  Range immediately shut down the Well after discovering the leak to avoid an accident.  ECF Nos. 5 at 14, ¶ 102; 8 at 3, ¶ 20.

8.  Plaintiffs sent a welder to repair the Line Heater, and delivered another Line Heater for a different Well.  ECF Nos. 5 at 14, ¶¶ 103, 105; 8 at 3, ¶¶ 21, 23.

9.  Before installing the Line Heater, "Range conducted an x-ray and visual inspection of the Line Heater's welds."  ECF Nos. 5 at 14, ¶ 106; 8 at 3, ¶ 23.  After conducting the inspection, Range rejected the Line Heater and returned it to Plaintiffs with instructions not to deliver another Line Heater.  ECF Nos. 5 at 14, ¶¶ 108-09; 8 at 4, ¶ 25.

10. Plaintiffs met with Range and (1) acknowledged that they had serious weld quality problems; (2) admitted that their quality control/quality assurance measures were lacking;

(5:09CV02764)

(3) represented that they would invest in a new welder; and (4) committed to changing their welding procedures.  ECF Nos. 5 at 18, ¶ 132; 8 at 5, ¶ 37.

11.     Immediately after the meeting, Plaintiffs began to repair the Separators.  ECF Nos. 5 at 18, ¶ 137; 8 at 5, ¶ 39.

12.     Range sent Plaintiffs a check in the amount of $548,453.03 and Plaintiffs cashed the check.  ECF Nos. 5 at 18, ¶¶ 137-39; 8 at 5, ¶¶ 40-41.  Range sent Plaintiffs another check in the amount of $25,522.20, and upon receipt Plaintiffs cashed the check.  ECF Nos. 5 at 19, ¶¶ 140, 142; 8 at 5, ¶¶ 42, 44.

13.     Plaintiffs did not provide Range with the replacement piping to repair the six Separators. ECF Nos. 5 at 19, ¶ 143; 8 at 6, ¶ 45.